## STEAMBOAT COMPANY *v.* THE COLLECTOR.

1. Under the ninth section of the act of July 13th, 1866, laying on the owners of steamboats a tax of "2½ per cent. of the *gross receipts from passengers*," the owners of a night-boat which receives a certain sum for the mere transportation of persons (that is to say, for their passage, or barely being on the boat during its transit), and also a certain sum for the use of berths and state-rooms (which berths and state-rooms it was not obligatory on the passengers to take, or pay for, and which persons who were willing to sit up all night did not take), is chargeable with 2½ per centum on the latter sort of receipts as well as on the former.

2. A proviso to an existing act, *held* to have been repealed by an act which "*amended*" the former act, "by striking out all after the enacting clause and inserting in lieu thereof, the following;" this "following" being in part an iteration of the words of the section amended, and in part new enactments.

3. The proviso in the fourth section of the act of March 3d, 1865, exempting a certain class of steamboats from a tax of 2½ per cent., which was laid on all steamboats by the one hundred and third section of the act of June 30th, 1864, fell by the enactment of the ninth section of the act of July 13th, 1866, which "amended the first-named act by striking out all after the enacting clause and inserting in lieu thereof the following;" this "following" being in part an iteration of the words of the section of the act of June 30th, 1864, amended, and in part new enactments.

ERROR to the Circuit Court for the Southern District of New York.

The New Jersey Steamboat Company had a night-line of steamboats which ran between New York and Albany, and

---

* Code of Georgia in force in 1863, p. 338, §§ 1701–2.

*which paid tonnage duty* in conformity with the laws of the United States. The boats were furnished with berths and state-rooms. But it was not obligatory on passengers going on the boats to take either. They might pay for a passage only, that is to say pay for the " bare right " to be on the boat, while it was going from one place to the other, in which case they would have to sit up all night; or they might pay in addition to the passage-money a certain sum, in which case they had the privilege to occupy a berth or a state-room. The accounts of passage-money received were kept distinct from those of money received for berths or state-rooms.

In this state of things, the collector of the United States at New York, asserting that he was justified by the ninth section of an act of Congress of July 13th, 1866, hereinafter set forth, demanded from the company the sum of $7972.66, which he alleged to be a tax assessed at the rate of $2\frac{1}{2}$ per cent. on the company's " gross receipts from passengers " during the summer of 1869.

The sum just mentioned was thus made up:

For the transportation of passengers (passage-money), . $4831 99
For berths or state-rooms, . . . . . . 3140 67

$7972 66

If the government had a right to lay a tax on the company for passage-moneys, and the price of berths and state-rooms let, it was not denied that the sums charged were the right ones, but the company denied—

1st. That it was bound by the act relied on by the collector, or by any other act, to pay a tax on either item of its receipts.

2d. That, if it was bound by that act or any other act to pay the tax on the first item, it was bound to pay it on the second.

Having, however, paid both on compulsion, and under protest, it now, December, 1869, sued the collector to recover both, or at least the latter.

Whether the company was bound to pay any tax depended

upon the fact whether the statute relied on by the collector and giving generally a tax, had repealed a previous statute relied on by the company, and discharging specifically from tax all companies which paid a tonnage duty, which confessedly this company did pay.

The case as to these statutes was thus:

An act of July 14th, 1862,* entitled "An act increasing temporarily the duties on imports and for other purposes," by its fifteenth section laid a tonnage tax of 10 cents per ton on all steamboats.

An act of June 30th, 1864,† to provide revenue to support the government, and to pay interest on the public debt and for other purposes, by its one hundred and third section laid, in addition, "a tax of 2½ per centum upon the gross receipts" of steamboats, "engaged or employed in transporting passengers or *property* for hire." It made certain other provisions about taxation.

An act of March 3d, 1865,‡ by its fourth section increased the tonnage duty on steamboats to 30 cents per ton, and by a proviso to the section enacted,

"That the receipts of vessels paying tonnage duty shall not be subject to the tax provided in section one hundred and three of 'An act to provide revenue,' &c., approved June 30th, 1864, nor by any act amendatory thereof."§

---

* 12 Stat. at Large, 558.    † 13 Id. 275.    ‡ Ib. 493.

§ As it is mentioned in the opinion of the court, *infra,* p. 491–2, that this section four of the act of 1865, "contains other matters besides the proviso in question," and as an argument is drawn from that fact, the whole section is here given. It is thus:

"SECTION 4. And be it further enacted, that section fifteen of an act entitled 'An act increasing temporarily the duties on imports, and for other purposes,' approved July 14th, 1862, be, and the same hereby is amended so as to impose a tax or tonnage duty of thirty cents per ton in lieu of ten cents, as therein mentioned.

"*Provided,* That the receipts of vessels paying tonnage duty shall not be subject to the tax provided in section one hundred and three of an act to provide internal revenue to support the government, and to pay interest on the public debt, and for other purposes, approved June 30th, 1864, nor by any act amendatory thereof.

"*Provided further,* That no ship, vessel, or steamer, having a license to trade between different districts of the United States, or to carry on the bank, whale, or other fisheries, nor any ship, vessel, or steamer to or from any port or place in Mexico, the British Provinces of North America, or any of the West India Islands, or in all these trades, shall be required to pay the tonnage duty, contemplated by this act, more than once a year."

An act of July 13th, 1866, entitled "An act *to reduce* internal taxation, and to amend an act entitled, &c., approved June 30th, 1864, and acts amendatory thereof," by its ninth section,* amended the one hundred and third section of the act of June 30th, 1864, "by striking out all after the enacting clause and inserting in lieu thereof the following."

It then inserted provisions laying the same tax of $2\frac{1}{2}$ per centum of gross receipts on "steamboats, engaged or employed in the business of transporting *passengers* for hire," and made some other changes, *more or less* considerable, in other matters provided for in this one hundred and third section.   Its seventieth section was thus:

"All provisions of any former act *inconsistent with* the provisions of this act are hereby repealed."

I. The reader will perceive from what has been thus far said that the question was whether this ninth section of the act of July 13th, 1866, which "amended" the one hundred and third section of the act of June 30th, 1864, "by *striking out all after the enacting clause* and inserting in lieu thereof*" certain provisions in part identical with the old ones and in part not so, did not only abrogate *that* section of *that* act, but whether it swept away also with it, as something in its nature inseparable from it, the proviso in the fourth section of the act of March 3d, 1865, exempting steamers paying tonnage from the tax.

The solution of this question requires a fuller exhibition than that which, for the purpose of a general idea, is above given, of the *whole* language of the two enactments; that is to say, of the one hundred and third section of the act of June 30th, 1864, and the ninth section of the act of the date just given, which the collector contended had not only repealed this section of the act of June 30th, 1864, but annihilated also the proviso in the fourth section of that of March 3d, 1865.   The two sections of the two acts are here put in parallel columns, words existing in one and not existing in

---

* 14 Stat. at Large, 135.

the other being put in italics, and the parts of the two sections relating to the same matter being put as nearly opposite as may be to each other.

| ACT OF JUNE 30, 1864. | ACT OF JULY 13, 1866. |
|---|---|
| | SECTION 9. *That section* 103 (*of act of June* 30, 1864) *be amended by striking out all after the enacting clause, and inserting in lieu thereof the following:* That every person, firm, |
| SECTION 103. That every person, firm, company, or corporation, owning or possessing, or having the care or management of, any railroad, canal, steamboat, ship, barge, canal-boat, or other vessel, or any stage-coach or other vehicle, | company, or corporation owning or possessing, or having the care or management of, any railroad, canal, steamboat, ship, barge, canal-boat, or other vessel, or any stage-coach or other vehicle, *except hacks or carriages not running on continuous routes,* |
| engaged or employed in the business of transporting passengers *or property* for hire, or in transporting the mails of the United States, | engaged or employed in the business of transporting passengers for hire, or in transporting the mails of the United States *upon contracts made prior to August 1st,* 1866, |
| *or any canal, the water of which is used for mining purposes,* shall be subject to and pay a tax of two and one-half per cent*um* the gross receipts | shall be subject to and pay a tax of two and one-half per cent. *of the* gross receipts *from passengers and mails* |
| of such railroad, canal, steamboat, ship, barge, canal-boat, or other vessel, or such stage-coach or other vehicle: ["Provided, That this section shall not apply to those teams, wagons, and vehicles used in the transportation of silver ores from the mines where the same are excavated to the place where they are reduced or worked:"]* | of such railroad, canal, steamboat, ship, barge, canal-boat, or other vessel, or such stage-coach or other vehicle: |
| Provided, That the *duty* hereby imposed shall not be *charged* upon receipts for the transportation of persons *or property*, or mails between the United States and any foreign | Provided, That the *tax* hereby imposed shall not be *assessed* upon receipts for the transportation of persons or mails between the United States and any foreign |

---

* So amended March 3, 1865.   13 Stat. at Large, 478.

Statement of the case.

port; ["but such *duty* shall be assessed upon the transportation of persons *and property* from a port within the United States through a foreign territory to a port within the United States, and shall be assessed upon and collected from persons, firms, companies, or corporations within the United States, receiving such *freight or* transportation."]*

*and* any person or persons, firms, companies, or corporations, owning, possessing, or having the care or management of any toll-road, ferry, or bridge, authorized by law to receive toll for the transit of passengers, beasts, carriages, teams, and freight of any description over such toll-road, ferry, or bridge, shall be subject to and pay a *duty* of three per cen*tum on* the gross amount of all their receipts of every description. But when the gross receipts of any such bridge or toll-road

shall not exceed the amount necessarily expended to keep such bridge or road in repair, no tax shall be *imposed* on such receipts

Provided, That all such persons, companies, 'and corporations shall, have the right to add the *duty or* tax imposed hereby to their rates of fare whenever their liability thereto may commence, any limitations which may exist by law or by agreement with any person or

port; but such *tax* shall be assessed upon the transportation of persons from a port within the United States through a foreign territory to a port within the United States, and shall be assessed upon and collected from persons, firms, companies, or corporations within the United States, receiving *hire or pay for* such transportation *of persons and mails; and so much of section* 109 *as requires returns to be made of receipts hereby exempted from tax when derived from transporting property for hire is hereby repealed:*
*Provided also, That* any person or persons, firms, companies, or corporations, owning, possessing, or having the care or management of any toll-road, ferry, or bridge, authorized by law to receive toll for the transit of passengers, beasts, carriages, teams, and freight of any description over such toll-road, ferry, or bridge, shall be subject to and pay a *tax* of three per cent. *of* the gross amount of all their receipts of every description. But when the gross receipts of any such bridge or toll-road, *for and during any term of twelve consecutive calendar months,* shall not exceed the amount necessarily expended *during said term* to keep such bridge or road in repair, no tax shall be *assessed upon* such receipts *during the month following any such term:*
Provided *further,* That all such persons, companies, and corporations, shall, *until the 30th day of April,* 1867, have the right to add the tax imposed hereby to their rates of fare whenever their liability thereto may commence, any limitations which may exist by law or by agreement with any person or

---

* So amended March 3, 1865.   13 Stat. at Large, 478.

Statement of the case.

company which may have paid or be liable to pay such fare to the contrary notwithstanding:

"And provided further, That no tax under this section shall be assessed upon any person, whose gross receipts do not exceed one thousand dollars per annum."

company which may have paid or be liable to pay such fare to the contrary notwithstanding.

*And whenever the addition to any fare shall amount only to the fraction of one cent, any person or company liable to the tax of two and a half per centum may add to such fare one cent in lieu of such fraction; and such person or company shall keep for sale, at convenient points, tickets in packages of twenty and multiples of twenty, to the price of which only an amount equal to the revenue tax shall be added:*

And provided further, That no tax under *the foregoing provisions of* this section shall be assessed upon any person, *firm, company, or corporation,* whose gross receipts do not exceed one thousand dollars per annum:

*And provided further, That all boats, barges, and flats not used for carrying passengers, nor propelled by steam or sails, which are floated or towed by tug-boats or horses, and used exclusively for carrying coal, oil, minerals, or agricultural products to market, shall be required hereafter, in lieu of enrolment fees or tonnage tax, to pay an annual special tax for each and every such boat of a capacity exceeding twenty-five tons, and not exceeding one hundred tons, five dollars; and when exceeding one hundred tons, as aforesaid, shall be required to pay ten dollars; and said tax shall be assessed and collected as other special taxes provided for in this act.*

SECTION 7.... *All provisions of any former act inconsistent with the provisions of this act, are hereby repealed.*

The question was, did the proviso of the act of March 3d, 1865, exempting from the tax laid by section one hundred and three of the act of 1864 (the act above, in the left-hand column), on all steamers which paid a tonnage tax, remain

notwithstanding the ninth and seventieth sections of the later act of July 13th, 1866 (the act above, in the right-hand column)?

But the question was, perhaps, not dependent even upon all that precedes; for finally came an act of Congress, of July 14th, 1870,* which in its twenty-fifth section referred to the proviso in the one hundred and third section of the act of June 30th, 1864, as apparently then in force, and repealed it. This act ran thus:

"SECTION 25. And be it further enacted, that section fifteen of the act approved July 14th, 1862, entitled '*An act increasing temporarily the duties on imports, and for other purposes*,' and section four of the act in amendment thereof, approved March 3d, 1865, be, and the same are hereby, so amended that no ship, vessel, steamer, boat, barge, or flat, belonging to any citizen of the United States, trading from one port or point within the United States to another port or point within the United States, or employed in the bank, whale, or other fisheries, shall hereafter be subject to the tonnage tax or duty provided for in said acts; and the *proviso* in section one hundred and three of the '*act to provide revenue to support the government and to pay interest on the public debt, and for other purposes*,' approved June 30th, 1864, requiring an annual special tax to be paid by boats, barges, and flats, is hereby repealed."

II. But if the act of 1866 was in force, unqualified by the proviso, and if the company was "to be subject to and pay a tax of 2½ per cent. of the gross receipts from *passengers*," the next question was whether the $3140.67 came within that enactment; this sum not having been received for passage, and being for another thing, to wit, for the right to occupy and sleep in berths and state-rooms.

The court below was of opinion against the steamboat company on both points, and, giving judgment for the collector, the company brought the case here.

*Messrs. J. M. Carlisle and W. P. Prentice, for the appellant:*

I. The proviso quoted in the act of March 3d, 1865, con-

---

* 16 Stat. at Large, 256.

fessedly had not been repealed in express terms.when this cause of action arose. We assert that it had not been repealed by implication.

The general intention of the act of 1866, as expressed in the title, was "to reduce internal taxation." This, as we shall hereafter see, was also the real intention of the act.

It would have been very easy for Congress to repeal the proviso in express terms. It did not do this. On the contrary, by its act of July 14th, 1870, it recognizes the existence and force of the proviso in section four of the act of March 3d, 1865.

The act of July 13th, 1866 was amendatory of the act of June 30th, 1864. But the act of March, 1865, had provided that—

"The receipts of vessels paying tonnage tax shall not be subject to the tax provided in section one hundred and three of 'An act to provide internal revenue to support the government, to pay interest on the public debt, and for other purposes,' approved June 30th, 1864, *nor by any act amendatory thereof.*"

Did not the Congress of 1866 see the words which we italicize? And if they did, why did they not expressly repeal the proviso if they meant to repeal it at all?

When Congress, in 1866, found the word "steamboat" in the law written in the statute-book and simply left it there, no change in the law was thereby intended or made.

After the passage of the act of 1866, as before, there were only two statutes governing the subject, viz., the act of 1864, as *amended,* and the act of 1865. The act of 1864 laid the tax, and the act of 1865 exempted the plaintiff from it. These statutes acted directly upon the taxpayer; but the act of 1866 acted only upon the act of 1864, changing some of its provisions, but not affecting steamboat companies.

The matter under consideration is one relating to the revenue system, a great system, made up of many acts, many amendments, many repeals, &c. The system is like a fabric dovetailed, patched, and pieced all over. Peculiarly

applicable, therefore, to the matter in hand are certain rules, which apply to cases of implied repeal generally, and where there is less need of them. Some of them are these:

1. Wherever two acts of the legislature are susceptible of a construction which will give effective operation to both without doing violence to either, it is incumbent on the court to search for some allowable means to give them such construction.*

2. A repeal of all acts inconsistent with the repealing statute does not affect a statute, not especially mentioned, and which relates to the same subject-matter, and which is not inconsistent with the repealing act.†

3. An express law, creating certain special rights and privileges, is held never to be repealed by implication by any subsequent law couched in general terms, nor by any express repeal of all laws inconsistent with such general law, unless the language be such as clearly to indicate the intention of the legislature to effect such repeal.‡

4. A statute amending a prior act does not repeal an intermediate statute, limiting the operation of such prior statute, unless there is a new inconsistency between the amended statute and that limiting its operation. There is no new inconsistency between the amended statute, i. e., the section one hundred and three of the act of 1864, as amended in section nine of the act of 1866, and the act of March 3d, 1865. The tax is the same. Only one class, i. e., vessels that have paid the tonnage tax, are exempted from it; other vessels, not enrolled, are in another class; and the same reason exists for the same law in the same language. Thus only can the intention of Congress, expressed in the title to the law of July 13th, 1866, *to reduce internal taxation,* be carried out.

Double taxes, such as were claimed of the steamboat company, are not favored.

---

* Attorney-General *v.* Brown, 1 Wisconsin, 513; Harford *v.* United States, 8 Cranch, 109.

† People *v.* Durick, 20 California, 94; Ely *v.* Holton, 15 New York, 595.

‡ The State *v.* Branin, 3 Zabriskie, 484; The State *v.* Minton, Ib. 529.

Look, too, in accordance with the canons of construction in statutes, at "the occasion and necessity of the law, the defect in former laws, and the designed remedy."

In 1861 and 1862, when we were just entering on the war of the rebellion, the necessity was felt of increasing the revenue, and the titles of the various acts indicate this, but in 1866, when the rebellion was completely suppressed, the government was in less need of money, and the act of July 13th expresses in its title its object, " *to reduce taxation.*"

Again. The act of March 3d, 1865, with the proviso of its section four, equalized the taxation of steamboats to that on other property, and no intention to repeal it can be discovered in subsequent legislation, but the contrary. Thus, in 1862, a tonnage duty of ten cents per ton was laid, and in 1864 another tax on steamboats was laid, by the act of June 30th, 1864, section one hundred and three, the section in question, viz., on the receipts of vessels. It is apparent that, as carriers, the steamboats had thus to pay double taxes. On the 3d of March, 1865, by act of that date, this double taxation was remedied. The tonnage duty was increased to thirty cents per ton, in section four; and vessels paying tonnage duty were exempted from the tax under section one hundred and three of the act of 1864.

II. The claim of the collector for $3140.67, the tax collected from the receipts from state-rooms and berths, is denied on independent grounds.

Whatever tax the statute does lay, it lays upon persons owning steamboats " engaged in the business of *transporting passengers* for hire." The statute says the tax shall not be assessed upon " receipts for the *transportation of persons* between the United States and any foreign port," but " shall be assessed upon the *transportation of persons* from a port within the United States through a foreign territory to a port within the United States." The entire section relates solely to the subject of transportation. The tax is meant by the statute to be assessed upon gross receipts *from passengers;* that is, from passengers *as such.* In other words, it is assessed upon money paid for transportation. State-room re-

ceipts are therefore not " receipts from passengers" within the meaning of the act.

*Mr. G. H. Williams, Attorney-General, and Mr. C. H. Hill, Assistant Attorney-General, contra.*

Mr. Justice SWAYNE delivered the opinion of the court.

The plaintiffs in error instituted the suit to recover back the amount of a tax which they allege was exacted from them without warrant of law. They were the owners of a night-line of steamers running between the cities of New York and Albany. The tax was upon the gross receipts from their passengers. Payment was required by the collector under the ninth section of the act of July 13th, 1866.* The facts, agreed by the parties, make *primâ facie* a clear case of liability within the language of this law. The tax was exacted only to the amount prescribed and upon a subject specified. There is no complaint as to either of these particulars. If this were the whole case there could be no controversy between the parties, and, doubtless, the case would not be here. But the plaintiffs in error insist that, by reason of certain provisions in the acts of June 30th, 1864, and of March 3d, 1865, the ninth section of the act of 1866 does not apply to receipts from passengers upon their steamers.

The one hundred and third section of the act of 1864† imposed a tax of 2½ per cent. of the gross receipts from passengers, freights, and the transportation of the mails, earned by steamboats within the category of those of the plaintiffs in error.

A proviso in the fourth section of the act of 1865‡ declared " that the receipts of vessels paying tonnage duty shall not be subject to the tax provided in section one hundred and three of the act of 1864, nor by any act amendatory thereof."

The steamers of the plaintiffs in error paid such tonnage

---

* 14 Stat. at Large, 135.  † 13 Stat. at Large, 275.  ‡ Ib. 493.

duty.  Under these acts they were entitled to the exemption claimed.

But the ninth section of the act of 1866 declared that the one hundred and third section of the act of 1864 should " be amended by striking out all after the enacting clause and inserting in lieu thereof the following."  It then proceeds to tax the receipts from passengers and for carrying the mails under contracts made prior to the taking effect of the act, as was done by the section amended; but. it wholly omits the tax upon freights and upon receipts for carrying the mails under contracts thereafter made, to which they would have been liable under that section, standing alone, before it was amended.  Three things were taxed by the original section, and but one of them, with the limited exception as to the mails, by the section which superseded it and took its place.  The seventieth section declares " that this act shall take effect, where not otherwise provided, on the 1st day of August, 1866, and all provisions of any former act inconsistent with the provisions of this act are hereby repealed."

The one hundred and third section of the act of 1864 was thus superseded and annulled.  The proviso in the fourth section of the act of 1865 fell with it.  The latter referred to the former.  When the former ceased to exist there was nothing left for the latter to operate upon.  The ninth section was much more limited in the taxes which it imposed than the one hundred and third.  The two sections were the same neither in letter nor substance.

The tonnage duty in question was imposed by the fifteenth section of the act of July 14th, 1862.*  It was thirty cents per ton, and was to be paid once a year.  The exemptions in the ninth section must have exceeded it largely in amount. It may well be that, by reason of these remissions, it was deemed proper by Congress that the tax upon the receipts from passengers, as well as the tonnage duty, should thereafter be paid, and that the exemption as to the former, given by the act of 1865, should no longer continue.  Such, in our

* 12 Stat. at Large, 558.

judgment, was the intent and effect of the ninth section of the act of 1866. It is said that the proviso in the act of 1865 is not expressly repealed. There was no necessity for an express declaration upon the subject. It was superseded by the abrogation of the one hundred and third section. And the seventieth section of the act of 1866 in terms repealed " all the provisions in any former act inconsistent with the provisions of this act." The ninth section of this act declares that the tax here in question shall be paid. The proviso in the act of 1865 declares that it shall not be paid.

Can there be a clearer inconsistency than that which subsists between these provisions? If Congress intended that the exemption should continue under the act of 1866 as it was under the act of 1864, it would have been easy to say so, and, doubtless, this would have been done.

It is insisted that the twenty-fifth section of the act of July 14th, 1870,* recognizes the continuing existence and force of the proviso in question. That section is as follows:

" SECTION 25. And be it further enacted, that section fifteen of the act approved July 14th, 1862, entitled ' An act increasing temporarily the duties on imports, and for other purposes,' and section four of the act in amendment thereof, approved March 3d, 1865, be, and the same are hereby, so amended that no ship, vessel, steamer, boat, barge, or flat, belonging to any citizen of the United States, trading from one port or point within the United States to another port or point within the United States, or employed in the bank, whale, or other fisheries, shall hereafter be subject to the tonnage tax or duty provided for in said acts; and the proviso in section one hundred and three of the ' Act to provide revenue to support the government and to pay interest on the public debt, and for other purposes,' approved June 30th, 1864, requiring an annual special tax to be paid by boats, barges, and flats, is hereby repealed." This section suggests several remarks.

(1.) Section four of the act of 1865 contains other matters

---

* 16 Stat. at Large, 269.

besides the proviso in question. There is a reference in the twenty-fifth section to one of those *other* matters, but none to the proviso.

(2.) The abrogation of the tonnage duty as thus declared, may have been because of the imposition of the tax here in question by the ninth section of the act of 1866, in addition to tonnage duty. It was a return to the liberal spirit manifested by the act of 1865, but instead of remitting the tax upon passengers and retaining the tonnage duty, it remits the latter and retains the former. It is not to be supposed that Congress intended to give up both. This legislation gives no support to the views of the plaintiffs in error.

(3.) The reference to the one hundred and third section of the act of 1864 involves an error of fact. That section contains no such proviso or provision as is mentioned, and, as before shown, it was wholly superseded by the act of 1866. The proviso referred to is in the ninth section of the last-named act. The reference to it does not in any wise affect the case before us.

JUDGMENT AFFIRMED.

Mr. Justice BRADLEY, dissenting:

I dissent from the judgment of the court in this case. The act of March 3d, 1865, exempted vessels which paid tonnage duty from paying the 2½ per cent. on gross receipts imposed by the one hundred and third section of the Internal Revenue Act of 1864. The act of 1866 amended this section by exacting the 2½ per cent. on receipts from passengers and mails only, and not on receipts from freight. A few other minor alterations were made. Such an amendment as this, in my judgment, cannot have the effect of repealing the exemption granted to vessels paying tonnage duty. It is contended that the mode of making the amendment makes a difference, namely, by striking out all after the enacting clause of the one hundred and third section and re-enacting it with the modification alluded to. It seems to me that the substance rather than the form should govern the construction. The several laws on the subject of internal revenue

constitute one system, all *in pari materia;* and if modifications of certain sections by amendment are to have the effect of making those sections absolute law, discharged from all qualifications and exemptions created by other parts of the system, the result will be to derange the harmony of the system as a whole. If farm products generally are taxed one per cent., but by a special law cotton is taxed ten dollars a bale, and by another special law wheat is taxed twenty cents a bushel, can it be that an alteration of the section taxing farm products generally, from one per cent. to two per cent., will abrogate the special tax on cotton and wheat? It is a rule that special laws are not abrogated by general ones, unless the intent to do it be very clear. It seems to me that this rule is lost sight of in the judgment of the court.