HEARD APRIL TERM, 1875.

*Ex parte* DUNN, *In re* HAND *vs.* SAVANNAH AND CHARLESTON RAILROAD COMPANY.

A decree of the Circuit Court, made in April, 1874, transferring the possession of the Savannah and Charleston Railroad to a Receiver and an Advisory Board, to be operated for the benefit of the creditors and stockholders of the road, is no bar to a proceeding by the Comptroller General under the fifth Section of the Act of 1869 to take possession of the same road.

The exercise of the authority conferred upon the Comptroller General, by the Act of 1869, to take possession of the Savannah and Charleston Railroad is not in conflict with the rights of the creditors of the road, nor does it impair the obligation of the contract between the State and the holders of the bonds issued by the corporation and guaranteed by the State under the Act of 1856.

Where the Constitution of a State does not make it liable to be sued, an action cannot be maintained against it except as provided by the Constitution of the United States. The mere consent of the Attorney General by appearing to the action and answering the complaint in the name of the State does not bind it.

Even where the State authorizes its proper officer to appear to a suit against it, it is not bound by the judgment as a legal, but only as a moral obligation.

The Act of 1869 authorizing the Comptroller General on a certain contingency to take possession of the Savannah and Charleston Railroad is not repealed by the Act of 1871 directing proceedings for foreclosure to be taken against all railroad companies which had failed to pay the interest due upon the bonds of the companies guaranteed by the State.

Unless the intent to abrogate is very clear, a special is never abrogated by a general law.

An order appointing a Receiver and an Advisory Board to take possession of a railroad with all its property and operate it for the benefit of its creditors, stockholders and all others interested is not a judicial, but an administrative order, which may be modified or changed without the consent of parties.

The authority conferred upon the Attorney General by the Act of 1871 to bind the State by appearing in any action against a railroad company must be confined to cases similar to those which by the same Act he was authorized to bring against railroad companies.

Where the State had guaranteed the payment of bonds issued by a railroad company and had taken from the company a mortgage or lien upon the railroad and all its property to protect the State from loss on account of its guaranty, an Act of the Legislature authorizing and directing the Comptroller General to take possession of the road on the company's becoming insolvent and failing to pay the guaranteed bonds does not authorize the performance of an act which could only be performed through the instrumentality of the judicial department of the State.

### BEFORE REED, J., AT CHARLESTON, APRIL, 1875.

This was a petition in the Circuit Court of Charleston County, entitled "*Ex parte* Thomas C. Dunn, Comptroller General of South Carolina, *in re* Daniel Hand *vs.* The Savannah and Charleston Railroad Company and others."

The case may be thus stated:

On April 28th, 1874, after the decision of the Supreme Court in the above entitled case of *Hand* vs. *The Savannah and Charleston Railroad Company*, dismissing the appeal which had been taken therein, (See 4 S. C.,) had been rendered, the following decree was made in said case by His Honor Judge Graham:

This cause is now before this Court for such further orders and decrees as the Court may be authorized to make, and the rights and interests of all the parties thereto may require. From the former order of this Court, filed October 3, 1872, the defendant, the Savannah and Charleston Railroad Company, appealed to the Supreme Court, and the Supreme Court has now sent down its judgment dismissing said appeal for irregularity, without prejudice.

The plaintiff, as a creditor of the defendant company, seeks, on behalf of himself and other creditors of like character, the payment and satisfaction of his demands, as a holder of certain past due coupons, for interest on bonds for which the defendant company is alleged to be liable. The complaint prays that an account may be taken of the amount due the plaintiff; that, in default of payment by a certain day, an order of sale and foreclosure of the mortgage, created by the Act of 1856, may be made; that a Receiver may be appointed; and that the plaintiff may have such other relief "as the nature and circumstances of this case may require."

The opinion of the Supreme Court, already referred to, uses these words: "Nor do we intend to define the nature of the issues which may properly arise under the pleadings, or to limit the control of the Circuit Court over the case."

In this condition of the cause, a *projet* of a decree, designed to harmonize and secure the rights and interests of all parties, has been submitted to the Court by the several counsel engaged in the cause, and the Court has carefully and maturely considered the same, with a view to do full justice and to secure the best practical results to all interested. The leading feature of this *projet* is the appointment of a Receiver to hold and operate the railroad of the defendant company and to apply the net profits to the payment of its debts. The plaintiff, in his complaint, seems to have had in mind such an alternative mode of payment, in praying, as he does, for the appointment of a Receiver to "take charge of the said road, with its appurtenances, until the amounts due to himself and the other creditors, whose claims are secured by the said mortgage created by the Act ratified December 20, 1856, with the interest thereon, have been paid and satisfied, or until the said road has been sold and disposed of as prayed for." :

The power of a Court of equity to mould its decree to all the equitable exigencies of a cause is wide and clear, and has at all times been considered one of its most beneficent offices. Moreover, by Section 299 of our present Code of Procedure, the Court may grant "any relief consistent with the case made by the complaint and embraced within the issue."

The proposed decree is, therefore, considered by the Court to be within its jurisdiction in the present cause.

It appears, in the light of all information available to the Court, to be likewise adapted to secure the payment of the debts of the defendant company, and at the same time to avoid a probably disastrous result to both parties from a present sale of the railroad and property of the company.     :

It is now, therefore, *ordered, adjudged* and *decreed*, that until the maturity of the six per cent. interest-bearing bonds of the Charleston and Savannah Railroad Company, secured by the mortgage of the road and its appurtenances, now the property of the defendant company, created by the provisions of the Act of the General Assembly of December 20th, 1856, the railroad of the said defendant company, together with all its rolling stock, its whole outfit and

property of every kind whatsoever, be, and hereby, is transferred and delivered into the possession of, and to be held by, a. Receiver hereinafter to be named by the Court, and an Advisory Board of management to be appointed as follows: Two to be appointed by the holders of the bonds of the Charleston and Savannah Railroad Company, and of the defendant company, guaranteed by the State of South Carolina, or a majority of them in amount; two to be appointed by the holders of the seven per cent. interest-bearing bonds of the defendant company, or a majority of them in amount; one to be appointed by the holders of the eight per cent. interest-bearing bonds of the defendant company, or a majority of them in amount; one to be appointed by the Court to represent the State of South Carolina; one to be appointed by the other and unsecured creditors of the defendant company, or a majority of them in amount; and two to be appointed by the said defendant company; and in case the said Advisory Board shall not be appointed as above provided, within a reasonable time, then the members thereof shall be named and appointed by the Court.

The said railroad, stock, outfit and property of the defendant company shall be held, worked and managed by the said Receiver and Advisory Board with the greatest possible skill and economy, and the results be reported quarterly to the Court in this cause, and the net profits, after paying all necessary expenses, including such amounts, if any, as may be due the employees and officers for services, shall be applied quarterly to the payment:

1. Of the six per cent. coupons reported as proved in this case by W. J. Gayer, Referee, in his report, filed on the 18th day of December, 1872, with interest on said coupons from September 1, 1869.

2. Of all other outstanding, unpaid or unsatisfied coupons for interest now due and payable, or to fall due and payable, in the order of their rank and right of payment, all questions arising as to such rank and right of payment or priority of lien to be referred to and determined by the Court whenever they may arise and after full hearing.

3. Whenever it shall happen that the interest coupons thus as aforesaid to be paid shall have been paid, and provision shall also have been made for the payment of those to fall due, satisfactory to the Receiver and Advisory Board, and any surplus of net profits shall remain or arise, the same shall be applied to the payment of

any other liens, if any there are, and then to the payment ratably of the unsecured debts of the defendant company.

The costs and disbursements of this cause shall be taxed and paid by the Receiver and charged to and as expenses. The proper expenses and counsel fees paid or due by the plaintiff, and the like expenses and counsel fees due by the defendants, shall be ascertained by a Referee, to be appointed by the Court, on motion, and reported to the Court, to be paid and charged as may be hereafter ordered.

Charles T. Mitchell is hereby named and appointed Receiver, with such salary as shall be fixed by the Advisory Board, and he shall hold his office until the maturity of the said six per cent. bonds and the further order of the Court, unless sooner removed by order of the Court, upon the recommendation only of the Advisory Board, and not otherwise.

The defendant company, the Savannah and Charleston Railroad Company, at any time pending this cause, upon showing that they have paid all the interest coupons in arrear, and that they have paid, or satisfactorily secured to be paid, all other and unsecured debts due by them, shall have leave to move for and be entitled to have their said railroad and property restored to them, and the Receiver shall further hold the said railroad and property open at all times at private sale upon favorable terms, such terms to be first reported to the Court and submitted to the counsel representing parties in this cause.

All creditors of the defendant company not now represented in the cause shall have leave by petition to come in and become parties to the cause.

To avoid multiplicity of suits and prevent waste, it is hereby ordered that each and all of the creditors and claimants against the said railroad and property of the defendant company, in anywise, and who may not voluntarily become a party to this cause, be, and hereby is and are, strictly enjoined from bringing or prosecuting any suit, action or proceeding against said company or its property, otherwise than in this cause, and from intermeddling with the possession and management of the said railroad and property by the said Receiver and Advisory Board in the due execution of their trust and duty under this order and decree.

It is further adjudged that the foregoing order is without prejudice to the right of the plaintiff, and other like holders of coupons

of the Charleston and Savannah Railroad Company, to the assertion of their lien by way of mortgage on the road and its appurtenances, for the payment and satisfaction of their claims in the event that their said claims are not paid and discharged out of the income as herein provided for.

No appeal was taken from said decree, and on March 1st, 1875, the above entitled petition was filed by Solomon L. Hoge, then Comptroller General of the State, in which he stated that on the 18th day of February, 1875, it was officially brought to his attention that the said Savannah and Charleston Railroad Company had failed to pay the interest upon its debt within six months after it became due; that the said company did not on the 1st day of March, 1874, pay the interest coupons upon their bonds which fell due on that day,—the payment of which bonds and coupons had been guaranteed by the State; and that said company has continued to fail, up to the present time, to pay the said interest, though payments had been demanded by the holders of the bonds.

That the petitioner had attempted to take possession of said railroad pursuant to the provisions of Section 5 of the Act entitled " An Act to enable the Savannah and Charleston Railroad Company to complete their road," which was ratified on March 2d, 1869 ; that on February 24th, 1875, he made a formal demand upon Charles T. Mitchell, President of said railroad company, to turn over to the petitioner the said railroad with all its appurtenances; that the said Mitchell refused to do so, and, in stating his reasons for said refusal, claimed to be in possession of said road as Receiver under the above recited order or decree of April 28th, 1874.

That, as Comptroller General of the State, it is made the duty of the petitioner, by the said Act of March, 1869, to take possession of the said road, with all its appurtenances, upon the happening of the contingency above recited, and the petition prayed that the Court would rescind so much of said order or decree of April 28, 1874, as placed said road in the possession of the said Charles T. Mitchell, as Receiver, and thus enable the petitioner to take possession thereof; and should the Court deem it advisable that said Receivership should be continued under said order or decree, then that the petitioner be allowed to perform the duties of said Receivership under the orders and direction of the Court.

On March 1st, 1875, an order was signed by his Honor Judge Reed requiring the said Charles T. Mitchell to show cause why the prayer of the petitioner should not be granted.

On the 30th day of March, 1875, an order was made that the petition be amended by inserting therein the name of Thomas C. Dunn, who, in the meantime, had become Comptroller General of the State in the place and stead of Solomon L. Hoge, the late Comptroller General of the State.

Daniel Hand filed an answer to the petition, wherein, after reciting the prayer of the petition and the decree above recited of April 28th, 1874, and stating that the petitioner is not a party to the suit of Daniel Hand against the Savannah and Charleston Railroad Company, and others, and setting forth who were the parties to said suit, he proceeded as follows:

4. That the said Charles T. Mitchell, Receiver, and the Advisory Board created by said decree, are thereunder in possession of said road and its appurtenances, and the corporation referred to in the Act of 1869 is out of possession.

5. That the said decree met the approbation of all the parties in the cause, and no appeal ever was taken from it; and that the *projet* of said decree referred to therein was prepared and submitted by the Attorney General in behalf of the State.

6. That by a provision of the Act of 1869. it is provided and made the duty of the Comptroller General, upon the happening of a certain contingency, to take immediate possession of the road and appurtenances, and to lease the same to responsible parties, who shall have control thereof until the General Assembly shall by law provide for the settlement of the affairs of said company in the interest of all its creditors. That by this provision the petitioner was to do a single administrative act and no more. He was to dispossess the corporation and lease, but the Court did this before he had the opportunity. If the petitioner were in possession under said provision, he could not hold, but must lease, and his functions would then terminate, and the lessee would hold until the General Assembly should legislate.

7. That this provision of the Act of 1869 contemplated having done no more than that which the Court by its decree has already done, namely, taking the property from the insolvent corporation and causing it to be properly administered by responsible persons.

8. That afterwards the said General Assembly, by an Act approved March 7, 1871, (Statutes at Large, vol. 14, p. 612,) did provide by law for the contingency contemplated by the Act of 1869, and thereby superseded the provision of said Act wherein the petitioner claims; and, in fact, that the Attorney General, pursuant to the provisions of said Act of 1871, did commence proceedings thereunder, on which this Court made its decree, from which an appeal was duly taken, which said appeal is now pending before the Supreme Court.

9. That the said Charles T. Mitchell, Receiver, is not alone in possession of the said road and its appurtenances, but conjointly with the Advisory Board duly appointed, pursuant to the provisions of the decree above recited, and his and their possession is lawful and proper; and he, the said Daniel Hand, denies that either the said Charles T. Mitchell, Receiver, or the Advisory Board can be lawfully disturbed or dispossessed upon a proceeding such as the present rule to show cause, which is unusual, irregular and illegal.

10. That he, the said Daniel Hand, is a creditor of the said Savannah and Charleston Railroad Company to the extent of about fifty thousand dollars, including the principal and interest of the coupons held by him, and, under the decree, is to be first paid out of the income of the said road, without any prejudice to the lien on the property of the said the Savannah and Charleston Railroad Company held by him for the satisfaction of the principal and interest of his said coupons, and objects to the removal by this Court of the said Charles T. Mitchell, Receiver, and the Advisory Board.

11. That he understands and believes that a large majority of the creditors of the said Savannah and Charleston Railroad Company who have liens by way of mortgage on the property of the said road are well content with the decree filed on the 28th day of April, 1874, and are opposed to the removal of the said Charles T. Mitchell, Receiver, and the said Advisory Board and the substitution as Receiver of the said petitioner or any one else; and it is respectfully submitted that the opinion of these said creditors, who are alone and substantially interested in the property of the said road, are entitled to favorable consideration on this question.

12. That the said petitioner is no longer the Comptroller General of the State of South Carolina, having ceased to hold the said office on the 4th day of March, 1874.

13. That the State of South Carolina, by its then Attorney General, Hon. D. H. Chamberlain, became a party to the suit of him, the said Daniel Hand, against the Savannah and Charleston Railroad Company, and, having answered the complaint filed by him, and submitted itself to the jurisdiction of the Court, is bound by all the proceedings therein, and more especially by the decree filed on the 28th day of April, 1874, and all persons holding office under the said State are absolutely bound and concluded by the said decree as long as the same remains unreversed.

14. That the said petitioner is a resident of the city of Columbia, in the County of Richland, in the State of South Carolina, and it is impossible for any one to properly discharge the duties of Receiver of the said Savannah and Charleston Railroad unless he resides, as does the said Charles T. Mitchell, in the city of Charleston, and, like him, devoted his whole time to the interest of the said road.

15. That it is contrary to the course and practice of the Court to remove or displace a Receiver acceptable to the large majority of the creditors interested in a fund which is the subject of suit without some allegation as to the unreliableness of the said Receiver for the office held by him, or that he is unfaithful to his trusts, or that the property in his hands and under his control can be more successfully and judiciously managed by another Receiver, to be appointed in his lieu and stead, and no such pretenses are set up here for the removal of the said Charles T. Mitchell.

Charles T. Mitchell also filed an answer, wherein, after reciting the prayer of the petition and the decree of April 28th, 1874, he proceeded as follows:

4. That this respondent and the Advisory Board created by said decree are thereunder in possession of said road and its appurtenances, and the corporation referred to in the Act of 1869 is out of possession.

5. This respondent has understood, and believes it to be true, that said decree met the approbation of all the parties in the cause, and no appeal ever was taken from it.

He has also understood and believes that the *projet* of said decree, referred to therein, was prepared and submitted by the Attorney General in behalf of the State.

6. This respondent has understood, and believes it to be true, that, by a provision of the Act of 1869, it was provided and made the duty of the Comptroller General, upon the happening of a certain contingency, to take immediate possession of the road and appurtenances, and to *lease* the same to responsible parties, who shall have control thereof until the General Assembly shall, by law, provide for the settlement of the affairs of said company in the interest of all its creditors.

It will be seen by this that the petitioner was to do a single administrative act, and no more. He was to dispossess the corporation, and to lease, but the Court was in possession when the contingency happened. .

If the petitioner were to take possession under said provision, he could not hold, but must lease, and his functions would then terminate.

7. This respondent is advised and instructed that the provisions of the Act of 1869 do not contemplate that the Comptroller General shall dispossess this Court or supersede its functions, and more especially when it is manifest that the parties beneficially interested under said Act prefer their affairs to be administered and settled by the judicial department of the government, having agreed to or acquiesced in the decree of this Court.

8. This respondent further says that he is advised and understands that afterwards, the General Assembly by an Act approved March 7, 1871, (Statutes at Large, vol. 14, p. 612,) did repeal the Act of 1869, and thereby superseded the provisions of said Act, wherein the petitioner claims, and in fact that the Attorney General, pursuant to the provisions of said Act of 1871, did commence proceedings thereunder, on which this Court made its decree, from which an appeal was duly taken, which said appeal is now, after argument, pending undecided before the Supreme Court.

9. This respondent says that he is not alone in possession of the said road and appurtenances, but conjointly with the Advisory Board duly appointed pursuant to the provisions of the decree above recited, and this, and their possession is lawful and proper, and he denies that he or they can lawfully be disturbed or dispossessed upon a proceeding such as this rule to shew cause, which is

unusual and irregular, for the purpose of changing title and possession.

10. And he further says that since the date of this order to shew cause the petitioner has gone out of office and is no longer the Comptroller General.

11. That the Act of 1869 is a contract between the Savannah and Charleston Railroad Company and the State, and the same has been disregarded and virtually waived by the State in respect of this matter and various others therein.

On April 2d, 1875, the petition was heard by His Honor Judge Reed, who made an order that the petition be dismissed, that the prayer thereof be refused, and the rule be discharged.

Thomas C. Dunn, the petitioner, appealed.

*Corbin & Stone,* for appellant :

We maintain in this case that the Court below should have granted the petition of the Comptroller General, so as to enable him to take possession of the Savannah and Charleston Railroad Company's road and appurtenances, pursuant to the provisions of the Act of March 2, 1869, entitled "An Act to enable the Savannah and Charleston Railroad Company to complete their road."

The respondents admit that the Act of March 2, 1869, was part of the charter of the Savannah and Charleston Railroad Company ; that it was duly accepted by the said company on the 7th day of March, 1869, and that it is still binding between the State and said corporation, unless repealed or modified by the Act of March, 1871.

The Act of 1871 is a general Act, applying to all railroad corporations, and directs the Attorney General to cause to be instituted, immediately after the expiration of thirty days after the final passage of the Act, actions against railroad companies which have failed to pay the interest on the bonds issued by them and guaranteed by the State, unless before the expiration of said thirty days such railroad company or companies shall fully pay and discharge such interest.

There is nothing in this Act which *expressly* repeals the provisions of Section 5 of the Act of 1869, and we contend that it does not repeal them by implication.

1. The Act, while general in its application to all railroads whose bonds were guaranteed by the State, is limited as to time, for it does not contemplate proceedings under it, unless taken immediately after the expiration of thirty days after its passage, and such proceedings were to be had for the purpose of enforcing the payment of all interest due and unpaid at the time of the passage of said Act. If a company, the interest on whose bonds was not in default at the time of the passage of said Act, should subsequently thereto be in default as to interest, the provisions of this statute would not be of force, but the State would be left to pursue any remedy which might be proper for it.

2. There is no inconsistency in the provisions of the two Acts. The one furnished a summary remedy in favor of the State, which it could enforce so long as the contract existed between the State and the corporation. The other provided for the immediate action, on the part of the Attorney General, to enforce the claims of the State in the ordinary mode of legal procedure.

The later Act, not being inconsistent with the earlier, both could stand; and, as the later Act has virtually expired by its own limitation, the earlier one remains in full force and effect.—Sedgwick on Stat. and Const. Law, 361; Potter's Dwarris on Stat., 154–157; *State* vs. *Alexander*, 14 Rich., 247; *McCool* vs. *Smith*, 1 Black, 459; Henderson's Tobacco, 11 Wall., 652.

Though the provisions of two Acts be different, a general statute without negative words will not repeal a previous one which is particular.—Potter's Dwarris on Stat., 73, note 5, citing *Brown* vs. *County Commissioners*, 9 Harris, (Pa.,) 37.

It is a rule that special laws are not abrogated by general ones unless the intent to do it be very clear.—*Steamboat Company* vs. *Collector*, 18 Wall., 478; dissenting opinion of Bradley, J., 493; Sedgwick on Stat. and Const. Law, 361.

3. If, then, the statute of 1869 is of force, there can be no question as to the duty and authority of the Comptroller General in the premises. By the terms of this Act, which forms a part of the contract between the State and the corporation, if the corporation fails to pay the interest on its debt within six months after it shall become due, or fail to pay or provide for the payment of its debt within six months after it shall have become due, it becomes the duty of the Comptroller General of the State, and he shall have the power, to take immediate possession of the road, with all its ap-

purtenances, and lease the same to responsible parties, who shall have control thereof until the General Assembly shall, by law, provide for the settlement of the affairs of said company in the interest of all its creditors.

The contingency provided for in the charter has happened. The company failed to pay the interest on its debt within six months after it became due. This fact was duly brought to the attention of the Comptroller General. His duty then was imperative. He must take possession of the road, and the company must necessarily yield possession to him.

The statute is remedial. It gives the State a remedy to protect itself, which it would not have had otherwise.—Potter's Dwarris on Statutes, 73; Sedgwick on Stat. and Const. Law, 308.

The statute must be liberally construed in favor of the State and against the corporation.— *Gillett* vs. *Moody*, 3 N. Y., 479, 487.

Where by statute a new right is given and a specific remedy provided, the power can be executed and the right vindicated in no other way than that prescribed by statute.—Sedgwick on Stat. and Const. Law, 343; *State* vs. *Bank of State of South Carolina*, 1 S. C., (N. S.) 63.

It is hardly necessary to say that the statute is one which the State had power to make, since it contravenes no provision of the State Constitution.—Potter's Dwarris on Statutes, 79, 80, 81; *Calder* vs. *Bull*, 3 Dall., 386, 399.

The duty of the Comptroller General in the premises would be perfectly clear were the road still under the entire control of the corporation.

But now arises an apparent difficulty. The corporation and certain of its creditors say the road is no longer in the possession of the corporation. The Court has intervened and has appointed a Receiver, who has now charge of the entire property of the concern. But it can make no difference in whose hands the road and property of the corporation may be, so long as the corporation has the equity of redemption. The possession of the Receiver is not such a possession as ousts the State of its rights, and the corporation cannot be permitted, under the guise of a Receiver, to defeat the rights of the Comptroller General to take possession of the road and its appurtenances and dispose of them as directed by law.

The Comptroller General bases his right to the possession of the road on the ground that he has the paramount right to it under the contract—the Act of March, 1869.

His position is like that of a first mortgagee who claims a fund in Court realized from sale of mortgaged property on proceedings for foreclosure instituted by a second or subsequent mortgagee, or like that of a lien creditor of a bankrupt, whose claim must be first settled before the general creditors can be paid.

To him the State and the corporation have given the right, and on him imposed the duty, of taking possession of the road on the failure by the corporation to provide for the payment of its bonded debt or the interest thereon. This right neither the company nor the Court can take away; and when the attention of the Court is called to this right vested in him, it is its duty to remove every obstacle imposed by its orders and decrees in the way of the exercise thereof.

It is no sufficient answer to this proposition to say that the estate is a fund in Court, and that the Court will protect the rights of the State as the guarantor of the bonds. The State has a right, under the law and by its contract, not to the fund, but to the *possession of the property*, to dispose of it, not as the Court may direct, but as the Legislature may provide.

And as a Court would order the payment of a fund in its keeping to him who had the prior right, so it should allow the estate to go into the hands of him whom the law has designated as the person to take charge of it.— *Wiswall* vs. *Sampson*, 14 H., 52; *Gooch* vs. *Haworth*, 3 Beav., 428: *Russell* vs. *East Anglican Railway Company*, 3 Mac. & G., 104; Kerr on Receivers, 174.

Again, the Comptroller General has a paramount right to the possession of this road and all its property for the following reasons:

1. The statute gives it and the corporation has assented to it.

2. The statute confers authority only on the Comptroller General to take possession in the event of a failure to comply with the terms of the contract. Power thus given to one person excludes the exercise of a like power by any other person.—Dwarris on St., 275, and note, with authorities.

3. The Comptroller General is not bound by the decree of the Court in this case; (A) because he is not a party to the proceedings; (B) because even if he were a party he could not consent to

a proceeding which, so far as he is concerned, the law forbids; (c) because the appearance by the Attorney General on the part of the State in this case cannot be regarded as a waiver by the State of its rights under the contract set forth in the Act of 1869, when the enforcement of those rights does not rest with the Attorney General but with the Comptroller General; (D) because it is not shown that the Comptroller General knew of the order appointing a Receiver in this case until he demanded possession of the road.

(A.) The decree in this case not only appoints a Receiver but forbids everybody, by a general injunction order, from bringing or prosecuting any suit, action or proceeding against the company or its property otherwise than in this cause, &c., without prejudice, however, to the right of the plaintiff and other like holders of coupons of the Charleston and Savannah Railroad Company to the assertion of their lien by way of mortgage on the road and its appurtenances, for the payment and satisfaction of their claims in the event that their said claims are not paid and discharged out of the income provided for in said order.

Now, while this decree may be binding on all creditors of the road who are or may choose to become parties to the suit, it can have no effect on parties who are outside of the territorial jurisdiction of the Court, or who have been given special privileges under the grant by the State to the corporation, which the Court was not asked to and has not passed upon. As to such persons the decree is not binding.

An injunction will not be allowed against a party not a defendant to the bill or not properly before the Court.—*Fellows* vs. *Fellows*, 4 Johns. Ch., 25; High on Injunctions, § 747; *Waller* vs. *Harris*, 7 Paige, 168.

(B.) The Comptroller General could not, if he had been a party to the case of *Daniel Hand* vs. *Savannah and Charleston Railroad Company*, have consented to any order which would relieve him from a duty imposed on him by law.

When the duty is clearly defined, he must execute it as an executive officer of the State, and the judiciary department of the government could not, by its decrees, work a repeal of a positive constitutional statute.—*Marbury* vs. *Madison*, 1 Cr., 137, (171); *Grier* vs. *Taylor*, 4 McC., 206.

To do so would be to usurp legislative or political power.—*Cherokee Nation* vs. *Georgia*, 5 Pet., 1, (20, 28, 75.)

(c.) The State has not lost its right to enforce its contract with the corporation because of the appearance of the Attorney General on behalf of the State in the case of Daniel Hand.

The question in the cases of *Hand* vs. *Savannah and Charleston Railroad Company*, and *State* vs. *Savannah and Charleston Railroad Company* was whether the corporation was or was not liable for coupons of bonds issued by the Charleston and Savannah Railroad Company under the Act of December 20, 1856. If the defendant corporation were not liable for payment of said coupons, then it was not in default, and the Comptroller General had no right to the possession of the road so long as the company paid the interest on the coupons for which it was undeniably liable. This interest it did pay until the 1st day of September, 1873, so far as the Comptroller General is informed.

But as to the coupons or the bonds of 1856, the Comptroller General could properly decline to take action, since the State was itself seeking a judicial determination of the question of the liability of the defendant corporation thereon.

(d) The order appointing a Receiver was not made with the knowledge or consent of the Comptroller General. So far, then, as it abridged the powers conferred on him by statute, or interfered with him in the performance of his duties, it is a nullity, and the Court below should have so held.

But the Court having made the order, and the Receiver appointed by it being in possession, the Comptroller General, out of respect to the Court, and to avoid any conflict of jurisdiction between the executive and judicial departments of the government, comes in by petition and asks the Court to modify its order forbidding *all persons* from meddling with the possession of said road, so as to permit the Comptroller General to perform his duty under the law without coming in conflict with the officers of the Court.

Of the regularity of this mode of proceeding there is no question raised. It is strictly in accordance with the established practice in equity and under the Code of Procedure.— *Wiswall* vs. *Sampson*, 14 H., 66; Kerr on Receivers, 172–4; Story's Eq. Prac., 267, 377; Hoffman's Prov. Rem., 508.

The Court, then, should have granted the prayer of the petition, because it is evident that by its decree it was infringing upon the duties devolved by law on the executive department of the government and usurping functions which did not belong to it.

A Court can compel an executive officer to perform duties required of him by law, but it cannot constitutionally enjoin or prevent him from performing duties which the law says he must do, and which he is willing to undertake.—*Marbury* vs. *Madison*, 1 Cr., 137, p. 164.

All that the Court is asked to do, as a matter of strict law, is to allow its own officer to place in the hands of the person entitled to it under the charter the possession of this road and all its appurtenances, so that the State, the chief creditor of the corporation, and the guarantor of its bonds, may protect its interests, as provided by law, while it sees that no harm is done to other creditors.

This request is reasonable. To the bondholder it can make no difference who has the road so long as he gets his money. In the economical administration of its affairs, he has little interest, as he has the State guaranty to fall back on when the road's assets are exhausted.

The corporation has no right to object, because it is bound by its charter to give possession to the Comptroller General whenever it fails to comply with the terms of its charter.

The Receiver has no right to object, because he is surrendering possession to one having paramount right.

The State, which is ultimately liable for the payment of the bonded debt, has the right to have the road administered by the officers whom it has designated for the purpose, so that it may not be compelled to pay a larger bonded debt than is just and right.

It was a matter of legislative discretion by whom possession of the road should be taken. The Legislature, in the exercise of its discretion, put this duty on the Comptroller General, and the Courts have no constitutional power to thwart this discretion by appointing a Receiver, and upholding him in his refusal to permit the law to be carried out as directed by the statute of 1869.

*Buist & Buist*, contra:

Daniel Hand, the plaintiff, being a holder of a large amount of bonds and past due coupons of bonds of the Charleston and Savannah Railroad Company, issued under the provisions of the Act of the General Assembly of South Carolina ratified on the twentieth day of December, 1856, and guaranteed by the State, filed his com-

plaint on the 12th April, 1870, against the following parties as defendants, to wit: The Savannah and Charleston Railroad Company, William Aiken, George W. Williams and James Robb, trustees, and D. H. Chamberlain, Attorney General of South Carolina.

At the same time there was filed a notice of *lis pendens* as prescribed in Section 155 of Title IV, p. 600, of the General Statutes, it being provided thereby "that every person whose conveyance or encumbrance is subsequently executed, or subsequently recorded, shall be deemed a subsequent purchaser or encumbrancer, and shall be bound by all proceedings taken after the filing of such notice to the same extent as if he were made a party to the action."

The complaint, among other things, sets forth that the Charleston and Savannah Railroad Company having become insolvent by reason of the casualties of the war a new company had been incorporated by Act of the General Assembly, ratified on the 20th December, 1866, and that the said company thereby formed had become invested with all the rights, powers, privileges and franchises of the Charleston and Savannah Railroad Company, and had assumed and become liable for the payment of the six per cent. interest-bearing bonds of the said Charleston and Savannah Railroad Company, guaranteed by the State, held by the plaintiff and others.

It likewise set forth that the defendants, the Savannah and Charleston Railroad Company, by Act of the General Assembly, which became a law, in due form, on the 6th March, 1869, had been empowered to borrow and raise a sum not exceeding $500,000, secured by a mortgage of the road, and that under the provisions of the said Act the said bonds had been issued, and a mortgage to secure the same executed by the said Savannah and Charleston Railroad Company to the defendants, William Aiken, George W. Williams and James Robb, trustees.

The prayer of the complaint was for judgment against the said Savannah and Charleston Railroad Company for the amount of the principal and interest of the coupons held by the said plaintiff, and for the assertion of the lien which he held as security for the payment of the same under the Act of 20th December, 1856, and for the foreclosure and sale of the mortgaged premises and distribution of the proceeds of the sale among the parties equitably and of right entitled to the same.

To this complaint all the defendants duly answered,—the answer of the defendant D. H. Chamberlain, Attorney General of South Carolina, having been filed on the 28th March, 1870, and in and by the said answer the said Attorney General, "for and on behalf of the said State of South Carolina, which had guaranteed the payment of the principal of the bonds issued under the Act of 20th December, 1856, and of the coupons thereof, submitted the rights of the State in the case to the judgment and protection of the Court, being content with the relief, if any, which may be afforded to the plaintiff suing on behalf of himself and all other creditors, the Charleston and Savannah Railroad Company standing in the same plight and condition with himself."

His Honor Judge Graham, of the First Circuit, filed his judgment sustaining the claim of the plaintiff on the 3d October, 1872.

From this judgment the defendants, the Savannah and Charleston Railroad Company, and Aiken, Williams and Robb, trustees, appealed, and, the case having been twice argued before this Court, judgment was pronounced on the —— day of ——, 1874, and by this judgment the appeal was dismissed for irregularity without prejudice.

The case having thus been again remitted to the Circuit Court, Judge Graham, on the 28th April, 1874, filed a judgment, from which no appeal has been taken by any of the parties.

By this judgment all the property of the road, the subject of the suit, with its appurtenances, together with all its rolling stock, its whole outfit and property of every kind whatsoever, was transferred and delivered into the possession of the Receiver named and an Advisory Board of management, until the maturity of the six per cent. interest-bearing bonds of the Charleston and Savannah Railroad Company, and provision was made that it should be worked and managed by the said Receiver and Advisory Board, and the net profits, after paying all necessary expenses, applied to the payment of the coupons of the outstanding bonds.

It was further provided that all the creditors of the defendant company not then represented in the cause should have leave, by petition, to come in and become parties to the cause, and the creditors and claimants against the said railroad in anywise, and who may not voluntarily become parties to the cause, should be enjoined from bringing or presenting any suit, action or proceeding against said company or its property, otherwise than in the said

cause, and from intermeddling with the possession and management of the said railroad and property by the said Receiver and Advisory Board in the due execution of their trust and duty under the said decree.

The petition of the Comptroller General sets forth that; as Comptroller General of the State, it is made his duty, and he is given the power, by the Act ratified on the 2d March, 1869, to take immediate possession of the said Savannah and Charleston Railroad, with all its appurtenances, and the prayer is that so much of the decree of 28th April, 1874, as places the said railroad in the possession of the said Charles T. Mitchell, as Receiver, be rescinded, and "thus that your petitioner be enabled to take possession thereof; and should it be deemed advisable that said Receivership should be continued, then, he, the said petitioner, suggests that, with the other duties imposed upon him by law, he may also perform that duty."

The State, having submitted itself to the jurisdiction of the Court, became bound by the judgment of Judge Graham, filed on 28th April, 1874.

Associate Justice Willard, in the case of the *State,* ex relatione *the Attorney General,* vs. *the President and Directors of the Bank of the State of South Carolina,* (1 S. C., 71,) states the law as it stands on this question: "But it is equally clear that the Court of Chancery has possession of the controversy both as it regards the questions at issue and the parties. The State has intervened in the person of its Attorney General and submitted its right to that Court by answer."

And at page 72: "In the present case, however, the State is a real and not a nominal party; and this is claimed as placing the case in a peculiar attitude to the rule in question. The State can neither be sued nor compelled to appear in its own Courts or elsewhere. Where it enters the Courts, it does so voluntarily, and, it is to be presumed, for the reason that some important object cannot be attained except through the aid of the judicial arm of the government. But no proposition is more clear than that when the State places itself in the attitude of a suitor in its Courts, it subjects itself to all the rules that bind the jurisdiction from which it seeks relief."

When it enters the Court of Chancery, it conforms to every requirement that binds the humblest citizen.

When it claims the aid of the writ of *mandamus*, it takes it subject to all the rules that control its employment. It follows, therefore, that the same rule must be applied in the present case that would govern in a case of private rights, and, accordingly, that, regarding the State as a claimant to the fund in question, an insuperable objection exists to the exercise of the jurisdiction claimed in these proceedings.

If the petitioner claims the road as a public officer, his claim must rest upon the provisions of the Act of March 2, 1869, and he can only claim and hold for the purposes and objects contemplated by this Act.

The Act provides, in Section 5, that, upon a contingency specified, it shall be his duty, and he shall have the power, to take immediate possession of said road, with all its appurtenances, and lease the same to responsible parties, who shall have control thereof until the General Assembly shall by law provide for the settlement of the affairs of said company in the interests of all its creditors.

Under this provision of the Act of 1869 it was contemplated that nothing more should be done than that which has been already done, to wit, the transfer of the property from the insolvent corporation, causing it to be regularly administered by responsible persons.

So long as the judgment of Judge Graham, filed on 28th April, 1874, remains without modification or reversal, its provisions, which are obligatory on the State as much as on any of the other parties defendants, render it impossible that the petitioner should discharge the duties imposed upon him as a public officer by the Act of 1869.

The practical result of placing the petitioner as a public officer in the custody of the road under the Act would be to deprive the Court of Common Pleas of the County of Charleston, which now has control of all the property of the road, it being a fund in Court, of all jurisdiction in the matter, and give him supreme power, only to be interfered with by the General Assembly of the State.

If the petitioner, as a private citizen or an individual, desires to install himself as the Receiver, under the judgment of Judge Graham, he has made no shewing, either by affidavit or otherwise, to entitle him to receive the appointment.

It is the will of all the creditors that the management of the road should remain as it is.

It is incumbent on the petitioner to shew that the present Receiver, Mr. Mitchell, and the Advisory Board have acted either indiscreetly or to the injury of the creditors, and this he has not attempted.

All the creditors have confidence in the administration of the affairs of the road and are unanimous in opposing a transfer of the property.

In Kerr on Receivers, p. 149, it is said: "Where a Receiver has been appointed, the Court will not remove him on the mere ground of his being an illiterate person, unless some other reason can be given, such as mismanagement, dishonesty or incompetency to manage the estate."

The fifth Section of the Act of 1869 is repealed by the provisions of the Act approved March 7th, 1871, entitled "An Act to protect. the interests of the State whenever payment of interest now due remains unpaid on bonds issued by any railroad company, and whereon the guaranty of the State is endorsed."

By the first Section of this Act it is provided as follows, to wit: "That the Attorney General be, and he is hereby, required and authorized to cause to be instituted immediately after the expiration of thirty days after the final passage of this Act, for and on behalf of, and in the name of, the State, an action, suit or other legal proceeding in any Court of this State, or of the United States, against each railroad company which has, also against all railroad companies which have heretofore, issued bonds upon which the guaranty of the State is endorsed, and on which interest is now due and unpaid, unless within thirty days after the final passage of this Act such railroad company or railroad companies shall fully pay and discharge such interest, for the purpose of enforcing the payment of all interest due on the bonds of such railroad company and protecting and securing the State against loss or damage by reason of said guaranty, and to this end to enforce the rights of the State by virtue of the statutory or other lien or mortgage held by the State or held to secure the payment of said bond or bonds on all or any of the property, assets or effects of such company or companies."

By the second Section the Attorney General was authorized to appear for, on behalf of, and in the name of the State, in any action, suit or proceeding on behalf of any other party or parties against any such railroad company or railroad companies, and to

bind the State in such action, suit or proceeding, and to protect the interest of the State therein.

By the seventh Section all Acts and parts of Acts inconsistent with the said Act were repealed.

It is submitted that it was the design and purpose of the General Assembly, by the Act of March 7th, 1871, to supersede the remedy provided in the Act of 1869 against defaulting railroads.

A new, complete and more comprehensive system was engrafted on the law by the Act of March 7, 1871; and the Act of 1869, in so far as it authorized the Comptroller to take possession of and lease the Savannah and Charleston Railroad, was virtually abrogated.

This conclusion results from the proper construction of the Act and of the law applicable thereto.

The provisions of the two Acts are so repugnant that they cannot stand together or be consistently reconciled.

In *Daviees* vs. *Fairbain*, (3 Howard, 636,) it is ruled that " if a subsequent statute be not repugnant in all its provisions to a prior one, yet if the later statute clearly intended to prescribe the only rules which should govern, it repeals the prior one."

In the following cases, to wit, *West* vs. *Pine*, (4 Washington Circuit Court Reports,) *Milne* vs. *Huber*, (3 McLean's Reports,) and *United States* vs. *Irwin*, (5 McL., 178,) it was ruled that a later statute repugnant to a former one on the same subject matter, so that they cannot stand together, repeals it by implication.

In *Norris* vs. *Croker*, (13 Howard's Reports, 429,) it is ruled that " when a new statute covers the whole subject matter of an old one, and adds offenses and prescribes different penalties from those enumerated in the old law, it is by necessary implication a repeal of the former statute."

There is another and very serious view of this matter. It goes to the heart of it.

Is the Act of 1869, so far as it gives the Legislature judicial powers, within the Constitution?

Article I, Section 26, of the Constitution declares that "in the government of this Commonwealth the legislative, executive and judicial powers of the government shall be forever separate and distinct from each other, and no person or persons exercising the function of one of said departments shall assume or discharge the duties of any other."

The Act of 1869 undertakes to charge the Legislature with judicial functions.

If there may be any doubt of this, then the very question made here proves it.

This proceeding not only asks judicial functions for the Legislature, but it seeks for that purpose to take them from the Courts,—to take away from their jurisdiction after being possessed of the whole matter.

Again, it may be said the Act of 1869 is a contract between the parties, namely, the State and the corporation.

That by such contract the corporation contracted with the State that the General Assembly should have the administration of its affairs in case of failure, instead of the Courts provided by the Constitution for such jurisdiction.

This may be true; but if it is, Daniel Hand was no party to it. The holders of the bonds of 1856, secured by the statutory lien, were not parties to it. Neither Hand nor other holders are bound by such contract.

Again, jurisdiction cannot be given and cannot be taken away by consent or by contract.

This contract, if there be one, takes from the judiciary department of the government a jurisdiction imposed upon it by the Constitution, and it gives to the legislative department judicial functions, which are withheld from it by the Constitution.

September 17, 1875. The opinion of the Court was delivered by

Moses, C. J. The decree of 28th April, 1874, in the case of *Hand* vs. *Savannah and Charleston Railroad Company,* which it is claimed deprived the State of the power it proposed to exercise under the fifth Section of the Act of 1869, (14 Stat., 202,) is interposed as a bar to the petition of the Comptroller General, filed in the cause, for the possession of the road of the said company under the Act above referred to. So far as that decree vested any rights in the creditors of the company, it must be allowed all the force and validity of a judgment of a Court having jurisdiction over the subject matter and the parties properly before it. So far as it appropriated the net profits of the road to the payment of the demands of certain classes of creditors, its validity, except by appeal, cannot be questioned. We cannot, therefore, perceive how the enforce-

ment of the provision of the said Act, as to the possession of the
road, conflicts with the rights of creditors, or impairs the obligation
of any contract between the State and the holders of bonds issued,
either by the Charleston and Savannah Railroad Company or the
Savannah and Charleston Railroad Company, and guaranteed
by it.

Unless the Constitution of a State recognized its liability to suit
in its own Courts, it is protected, by reason of its sovereign capacity,
from process issued by judicial authority, except as provided by the
Constitution of the United States. The mere consent of an officer
of the State, by appearing and answering in its name, does not bind
it by the judgment or decree which may be the result of the suit.

The Attorney General, although a law officer of the State, in fact
properly belongs to its executive department, and has no more
power to control the State by his action in Court than the Governor
or the Comptroller General. Indeed, when a State can be made a
party in the Supreme Court of the United States, the process to
that end must be served on the Governor. The legislative power,
where in its opinion the interest of the State demands that it should
be protected by a proper representation in a legal proceeding, may
authorize any of its officers, or, indeed, any person, to appear on its
behalf and bind it by his action. While a decree against the State
so appearing could not constitute a judgment against it to be en-
forced by a levy and sale of its property, its good faith and honor
would be so involved as to compel the Legislature to recognize the
debt or demand thus created as one with which compliance could
not be avoided without prejudice to its character and name.

Before determining whether and how far the decree of the Court
in the case of Hand deprives the State of the power reserved by
the Act of 1869, it is proper to consider whether so much of it as
confers the power in question on the Comptroller General is repealed
by the Act of 1871.—14 Stat., 612.

By the Act of 1869 the Savannah and Charleston Railroad
Company was empowered to raise $500,000 in bonds, to fall due
twenty years from their date, and to bear seven per cent. interest
per annum. To make the proposed issue available to the company,
by readily raising money for its use, the State agreed that the pri-
mary lien which it then held on the road as a security for a former
guarantee of bonds, for the payment of which the road was liable,
"shall, upon the issue of the bonds provided for in and by the said

Act, be postponed and become a second lien." It thus subordinated its security to that which might be created in favor of such new bonds. It will not be forgotten that this Act was in the nature of an amendment of the charter and thus constituted a contract between the State and the company. The contract could only be extinguished by a compliance on the part of the company with the obligations it imposed or a release of it by the State.

This right of the State to take possession of the road through its named officer, the Comptroller General, in the event of a failure by the company to fulfill the conditions of the contract undertaken by it, was the consideration for the surrender of its first lien. It was an agreement on what the parties regarded full consideration. The company issuing the bonds and disposing of them under the advantages afforded by the condition acceded to the whole as a contract binding on it, and which still continues to bind it, unless rendered void by some subsequent legislation by the State.

The measure to which it resorted by the Act of 1871 was but the enforcement of a right incident to the lien which it held on all the roads which had failed to pay the interest on the bonds it had guaranteed.

The power to take possession, reserved by the Act of 1869, did not deprive it of its right to foreclose its lien through the Courts.

The provision in the said Act constituted a remedy by the agreement of the parties, of which the State might avail itself in the event of a certain contingency, and that had occurred. The State consented to occupy a less favorable position than it held before, but the consideration which induced it was the right which it secured by the provision it is now attempting to enforce. If, under the Act of 1871, it had actually proceeded to a foreclosure, and consummated it by a sale, then the power under the Act of 1869 would have been lost by the change in the title and possession of the property. The construction of the Act of 1871 contended for on the part of the appellees would place the State in a worse position than it occupied before its passage, and cannot prevail unless the intention to that end is clear and manifest, keeping in view the purposes of the two Acts. Though "a subsequent statute, if taken strictly and grammatically, would control a prior statute if it were intended to have that operation," yet, though the terms be general, if by the peculiar character of the former statute the last enactment is so inconsistent with its terms and purposes that it is manifest it was

not intended to be included in its terms, it will not be construed a repeal.— *Williams* vs. *Pritchard*, 4 T. R., 2.

The Act of 1869 was in effect a contract between the State and the company. It annexed a condition which gave it an additional and independent power separate and apart from that which it could exercise under its general right of foreclosure. " A special law is not abrogated by general ones unless the intent to do it be very clear."—Bradley, J., in his dissenting opinion in *Steamboat Company* vs. *Collector*, 18 Wall., 478. Best, J., in *Rex* vs. *Carlile*, (3 B. & A., 161,) said: "It has long been a settled maxim that neither the provisions of the common or statute law are abrogated but by the express words of an Act of Parliament or by subsequent enactments so inconsistent with the previous law as to raise a necessary implication that the Legislature intended it should be altered." Holding that the said provision of the Act of 1869 is not repealed by the Act of 1871, it is proper next to consider the effect of the proceedings in the case of Hand on the application now before the Court. The second Section of the Act of 1871 authorized the Attorney General, for and on behalf of the State, to appear in any action on behalf of any other party or parties against any such railroad company or companies referred to, meaning those amenable to the provisions of the said Act. The order in the Hand case, set out in the pleadings, even if it is binding on the State by the action of the Attorney General, cannot prevent the enforcement of any right by the State not necessarily lost, destroyed or absorbed by the proceedings in which the said order was made. The act of the Court prescribing the agency through which the affairs of the company were to be administered, with the purpose of making profit on its capital for the benefit, first, of its creditors, and then of its stockholders, was not a judicial act, in the proper sense of the term, so binding as to be beyond change or modification. The form adopted may have been the best and most proper at the time, and may be considered so now; but if the order which directed it was not of that character which vested rights, the scheme resorted to could be substituted by any other which promised better results for the general benefit of all concerned. The power exercised, that of appointing a Receiver, (even with the extraordinary adjunct of an "Advisory Board of Managers,") is discretionary with the Court and one of a purely provisional character. The mere appointment does not affect the title to the property or rights of any who may

have an interest therein. Whatever vested rights creditors may have by the order of the Court in regard to the final disposition of the property or its profits in the hands of the Receiver are not impaired or affected by the mere change in the possession of the property.

Besides, the order for the appointment of a Receiver is not irrevocable. He is the officer of the Court, acting as its agent in a particular matter, and always subject to its control. He is usually appointed to close and wind up an estate or concern; but here the purpose was "to hold and operate the railroad of the defendants company," under a Board of Directors, to be selected in a manner not directed by the charter but prescribed by the Court.

While the decree must be respected and enforced, so far as it fixed the rights of creditors before the Court and appropriated the profits of the road to their payment, it cannot operate to deprive the State of a right which it has against the company. Its charter has not been extinguished. The property of the company is even now held subject to its equity of redemption, and the title to it still remains unchanged. The power conferred on the Attorney General to bind the State by appearing in any action against any railroad company must be held to refer only to cases of a nature similar to those he was authorized to bring under the Act and must be confined to the purposes which it was intended to accomplish. The end proposed by the Act was an enforcement of the lien given to the State to secure its guaranty. It contemplated no purpose of a different character. Will it be claimed that the Attorney General, by so appearing, could bind the State to any order which should be made in the cause, even to the discharge and release of the lien of the State, while, at the same time, it should be ordered to pay the bonds which it had guaranteed? The right of appeal would be no safeguard, for the appeal could only be taken and perfected by the Attorney General himself, who it is not natural or likely to suppose would move against an order to which he had consented, even if such a course would be consistent with the practice of the Courts.

How, then, can it be contended that a right secured to the State, in full consideration, on its part, to take possession of certain property by a designated officer, can be lost by the consent of another of its officers, the Attorney General?

The enforcement of the remedy under the Act of 1869 was to be through the agency of the Comptroller, and we see nothing in the

Act of 1871, or the proceedings in the case referred to, which can properly deprive him of it. A waiver of so important a condition, and the only one which promised safety or protection to the State for its guaranty, is not to be legally presumed. Unless the intent manifestly appears from the Act of 1871, it should not be construed to be so general and absorbing, through the power which it extends to the Attorney General, as to destroy a valuable right by contract reserved to the State. It contemplated the foreclosure of the lien held by the State in the property of such railroad companies as had issued bonds with its guaranty, and had not paid the interest due; and as it was competent for any holder of such bonds to resort to the same remedy, the object proposed by the State, through the said Act, would be as readily accomplished as if the proceeding had been instituted in its name and in its behalf.

We see nothing in the Act of 1869 in conflict with the Constitution of the State. It is alleged that so much of it as looks to "a settlement of the affairs of the company by the General Assembly" assumes for the Legislature the exercise of judicial authority. But, as between the State and the company, such a contract violates none of the constitutional inhibitions against the exercise by one department of the duties belonging to another. The mode of settlement to which the Legislature may resort might be by a reference of the whole matter to the decision of the Courts, and the words "in the interest of all the creditors" seem to look to a forum with the power of a final adjudication of all rights involved. When the Legislature assumes to discharge duties from which it is prohibited by the Constitution, it will be time enough to inquire into and pass upon its action. The Court is not to anticipate that it will violate its constitutional obligation, or prescribe in advance the mode and manner in which its legitimate functions are to be administered. Such a course would find no sanction in propriety or precedent.

The order reversing the judgment of the Circuit Court dismissing the petition has been already filed.

*Wright*, A. J., concurred.

WILLARD, A. J. I do not regard the fifth Section of the Act "to enable the Savannah and Charleston Railraad Company to complete their road," ratified March 2, 1869, (14 Stat., 201,) as

intending to supersede the ordinary remedies provided by law in the case of an insolvent corporation. Authority is there given, on the contingency of a failure of the corporation to fulfill certain engagements, in respect to which the State stood in the position of a surety, to the Comptroller General of the State, to take immediate possession of said road, with all its appurtenances, and to lease the same to responsible parties, who shall have control thereof until the General Assembly shall by law provide for the settlement of the affairs of the company in the interest of all its creditors. While, as affecting the company, its stockholders and officers, this provision stands on the footing of a contract on consideration voluntarily acceded to by them, yet to hold that it bound the creditors of the company to the extent of superseding their ordinary remedies in the Courts it would be necessary to find such an intent clearly expressed. I find no such intent expressed. On the contrary, the object and intent apparent on the face of the statute can be accomplished without such a construction. The plain intent of the Section was to strengthen and enforce by special provisions the general right of subrogation which is possessed by sureties. Although the provisions in question are in excess of what the law confers upon a surety through the right of subrogation, yet the object and intent can be fully understood by referring it to a purpose, on the part of the Legislature, to give, as against the corporation, special and peculiar rights to the State in the nature of the right of subrogation.

Such rights cannot displace the rights of creditors, for their rights are superior even to the right of subrogation enjoyed by the surety.

I think that there should be a strict Receivership, and, in order that the purpose of the statute may be as fully accomplished as the rights of parties will permit, that such Receivership is properly conferred upon the Comptroller General as the person designated to hold the property for the benefit of all parties interested in it.